STATE OF NORTH CAROLINA v. WALTER LEE LOCKLEAR

No. 7016SC166

(Filed 1 April 1970)

**1. Homicide § 21— cause of death — sufficiency of proof**

To warrant conviction in a homicide case, it is necessary that the State produce evidence sufficient to establish beyond a reasonable doubt that the death of deceased proximately resulted from defendant's unlawful act.

**2. Criminal Law §§ 104, 106— nonsuit — consideration of evidence — sufficiency of evidence**

In passing upon a motion to nonsuit in a criminal case, the court must consider the evidence in the light most favorable to the State and give the State benefit of every reasonable inference which may be legitimately drawn therefrom; and if when so considered there is substantial evidence, whether direct, circumstantial, or both, of all material elements of the offense charged, then the motion for nonsuit must be denied.

**3. Homicide § 21; Automobiles § 113— manslaughter — automobile wreck — proximate cause of death — sufficiency of evidence**

In a manslaughter prosecution arising out of an automobile wreck, the State's evidence permitted a legitimate inference that the deceased died from injuries received in the wreck, where there was testimony that prior to the wreck the deceased was a normal and healthy person and had not received any type of injury, that he received no injury during the six

and one-half hours which intervened between the wreck and his death, and that an autopsy of deceased revealed that he died from multiple rib fractures with subsequent internal hemorrhage.

**4. Automobiles § 113— manslaughter — sufficiency of evidence**

In a manslaughter prosecution arising out of an automobile wreck, the State's evidence *held* sufficient to support a jury finding that the wreck was caused by defendant's culpable negligence in driving at a high rate of speed and while intoxicated.

**5. Criminal Law § 77; Automobiles § 112— manslaughter — identity of driver of car — competency of evidence — prejudice to defendant**

In a manslaughter prosecution arising out of an automobile wreck, testimony by deceased's brother that he told the investigating officer, while he and defendant were sitting in the officer's car at the scene of the wreck, that defendant was the driver of the car in which the deceased received his fatal injuries, *held* admissible and not prejudicial to defendant, there being no merit to defendant's contention that the jury might consider his lack of response to the brother's statement as an implied admission.

APPEAL by defendant from *Clark, J.,* September 1969 Session of ROBESON Superior Court.

Defendant was indicted for manslaughter in connection with the death of James Dallie Sampson from injuries sustained in a single-car automobile wreck. The wreck occurred at approximately 2:30 p.m. on 16 November 1968 on a rural paved road three miles west of Lumberton. When the investigating officers arrived, they found the automobile registered in the name of defendant overturned and lying on its top off of a curve on the right side of the road at an angle to a road ditch and about nine feet from the paved portion of the highway. Uninterrupted skid marks led for a distance of 168 feet from the left side of the road in the curve over to the right side, and deep cuts in the shoulder of the road led from these skid marks an additional 30 feet directly to the overturned car. The officers found James Dallie Sampson lying face down in the ditch beside the car, not moving or making any sound. A bottle of non-tax-paid whiskey was found under his body.

Defendant was lying in some weeds 25 or 30 feet from the car. The officers smelled the odor of some intoxicating beverage about his person. When defendant attempted to walk, he was unsteady on his feet and fell down twice. His eyes were red and glassy, his face was flushed, his speech was slurred, and in the opinion of the officers defendant was highly intoxicated.

The officers also observed two other men at the scene. One of these, Romulus Sampson, a brother of James Dallie Sampson, testi-

fied at the trial that the four men, together with another who had left the scene before the officers arrived, had been together, riding in defendant's car, from 10 o'clock in the morning until the time of the wreck; that during this time the occupants of the car had drunk about three pints of white whiskey; that defendant was driving the car, traveling about sixty or sixty-five, when it entered the curve on which it left the road and turned over. Counsel for defendant stipulated that a breathalyzer test administered to defendant on 16 November 1968 after the fatal accident, by a licensed operator according to rules and regulations promulgated by the North Carolina Department of Health, produced a reading of .30 percent of alcohol in defendant's blood.

James Dallie Sampson was taken by ambulance from the scene of the wreck to the hospital at Lumberton, where he was examined by a doctor. After the doctor had advised that nothing was wrong and that he should be taken to jail to sober up, he was taken by patrol car to the county jail and was charged with public drunkenness. He was laid on his back on the cell floor and did not move. About 6:30 p.m. an ambulance was called, and James Dallie Sampson was returned to the hospital, where he was admitted to the emergency room and again examined by a doctor. The doctor told members of his family to take him home. They took him by automobile approximately six and one-half miles to his home, arriving at 9:15 p.m. It was then discovered that he was dead.

The pathologist who performed an autopsy on the following day testified that in his opinion the deceased died from multiple rib fractures with subsequent internal hemorrhage. The deceased's brother testified that prior to the collision he was a normal and healthy person and had not received any type of injury. The ambulance driver, officers, jailer, and other witnesses who had been with him between the time of the collision and the time of his death testified that the deceased had received no injury during that period.

Defendant was found guilty of involuntary manslaughter. From judgment imposing prison sentence of not less than four nor more than six years, defendant appealed.

*Attorney General Robert Morgan and Staff Attorney T. Buie Costen for the State.*

*J. H. Barrington, Jr., for defendant appellant.*

PARKER, J.

Defendant contends his motion for nonsuit should have been allowed because the State failed to show any causal connection be-

tween the wreck and the injuries which caused the death of the deceased. We find no merit in this contention.

[1, 2]   To warrant conviction in a homicide case it is, of course, necessary that the State produce evidence sufficient to establish beyond a reasonable doubt that the death of the deceased proximately resulted from the defendant's unlawful act. *State v. Minton,* 234 N.C. 716, 68 S.E. 2d 844. It is equally well established, however, that in passing upon a motion for nonsuit in a criminal case, the court must consider the evidence in the light most favorable to the State and give the State benefit of every reasonable inference which may be legitimately drawn therefrom. *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469. If when so considered there is substantial evidence, whether direct, circumstantial, or both, of all material elements of the offense charged, then the motion for nonsuit must be denied and it is then for the jury to determine whether the evidence establishes guilt beyond a reasonable doubt. *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431.

[3, 4]   In the present case there was no direct evidence that the deceased received any injuries as a result of the wreck. Two doctors who examined him after the wreck and before his death failed to discover his injuries, which were only revealed by the autopsy made on the following day. There was, however, testimony that prior to the wreck he was a normal and healthy person and had not received any type of injury. There was also testimony that he received no injury during the six and one-half hours which intervened between the wreck and his death. From this evidence a legitimate inference may be reasonably drawn that the deceased received the injuries which caused his death as a result of the automobile wreck. Indeed, on the evidence in this case it would strain credulity to find otherwise. There was ample evidence to support a jury finding that the wreck was caused by defendant's culpable negligence in driving at a high rate of speed and while intoxicated. *State v. Lindsey,* 264 N.C. 588, 142 S.E. 2d 355. There was no error in overruling the motion for nonsuit.

[5]   At the trial Romulus Sampson, a brother of the deceased, testified that while he and defendant were seated in the patrol car at the scene of the wreck and while the officers were still investigating the accident, he had told an officer that defendant was the driver. Prior to giving this testimony, the witness had already testified at some length concerning the events leading up to the wreck, in the course of which he had unequivocally stated from the witness stand that defendant was the driver. On cross-examination he repeated this

testimony. Under the circumstances we find no prejudicial error in allowing him to testify on direct examination to his prior consistent statement made to the officer shortly after the wreck occurred. Nothing in the record suggests that any contention or argument was made to the jury that, because defendant was present in the patrol car when the statement was made, they might consider his lack of response as an implied admission.

Defendant's remaining assignments of error brought forward in his brief relate to the court's charge to the jury. We have examined these carefully and are of opinion that, considering the charge as a whole and contextually, the court properly and adequately declared and explained the law arising on the evidence in this case and properly complied with the requirements of G.S. 1-180.

In the trial we find

No error.

CAMPBELL and HEDRICK, JJ., concur.